IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                                    13-CR-6103

DEBRA BULTER,

        Defendant.

## PLEA AGREEMENT

The defendant, DEBRA BULTER, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

## I.  THE PLEA AND POSSIBLE SENTENCE

1.     The defendant agrees to waive indictment and to plead guilty to a two count Information which charges (a) a violation of Title 18, United States Code, Section 1349 (conspiracy to commit mail fraud), for which the maximum possible sentence is a term of imprisonment of 20 years, a fine of the greater of $250,000 or twice the gross pecuniary gain or loss, a mandatory $100 special assessment and a term of supervised release of 3 years, and (b) a violation of Title 18, United States Code, Section 1957 (money laundering), for which the maximum possible sentence is a term of imprisonment of 10 years, a fine of $250,000 or twice the amount of the criminal derived property involved in

the transaction, a mandatory $100 special assessment and a term of supervised release of 3 years. The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2. The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 4 years, without credit for time previously served on supervised release. As a consequence, in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in Paragraph 1 of this agreement.

## II. ELEMENTS AND FACTUAL BASIS

3. The defendant understands the nature of the offenses set forth in paragraph 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crimes:

18 U.S.C. §1349

a. That two or more persons, in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful scheme to commit mail fraud; and

b. That the defendant, knowing the unlawful purpose of the scheme, willfully joined in it.

-2-

18 U.S.C. §1957

a.    That the defendant engaged in a monetary transaction in or affecting interstate commerce;

b.    That the monetary transaction involved criminally derived property of a value greater than $10,000;

c.    That the property was derived from specified unlawful activity;

d.    That the defendant acted knowingly, that is, with knowledge that the transaction involved proceeds of a criminal offense; and

e.    That the transaction took place in the United States.

## FACTUAL BASIS

4.    The defendant and the government agree to the following facts, which form the basis for the entry of the pleas of guilty including relevant conduct:

### Background

a.    From 2001 to September 2012, the defendant was the Program Administrator for the Department of Anesthesiology at the University of Rochester in Rochester, New York, which was also known as the University of Rochester Anesthesiology Group. The Department of Anesthesiology provided anesthesia services to patients undergoing surgery or other painful events at Strong Memorial Hospital, Highland Hospital and other medical facilities in Rochester, New York. The Department of Anesthesiology's management and operations were overseen by a physician known as the "Chair". The Department of Anesthesiology's administrative duties were overseen by a Program Administrator, who reported to the Chair.   The Department of Anesthesiology conducted its operations on a fiscal year basis from June 30th to July 1st.

b.     From 2001 through 2012, an anesthesia medical group (the "Anesthesia Medical Group") contracted with the Department of Anesthesiology to provide anesthesiologists at medical facilities served by the Department of Anesthesiology.    From 2003 to 2008, two doctors (the "two Group doctors") from the Anesthesia Medical Group individually contracted with the Department of Anesthesiology purportedly to provide "additional administrative work...[i]ncluding recruitment, education, and scheduling support..." to the Department of Anesthesiology.

c.     In early 2007, while still working for the Department of Anesthesiology, the defendant and two co-workers started a business called DJA Solutions, LLC to specifically provide administrative consulting services to the Anesthesia Medical Group.


## Offenses of Conviction

*Fraudulent Payments From September 1, 2007, to October 22, 2009*

d.     From September 1, 2007, to December 2009, the Department of Anesthesiology was deceived into making fraudulent payments to the two Group doctors and the Anesthesia Medical Group by being provided fraudulent documents which made it appear that the two Group doctors and the Anesthesia Medical Group had provided adequate services to the Department of Anesthesiology for such payments.

e.     The defendant caused to be prepared requisition forms which fraudulently increased the amount of money the Department of Anesthesiology was to pay the two Group doctors and the Anesthesia Medical Group pursuant to their contracts with the Department of Anesthesiology.    Such forms fraudulently stated that the two Group doctors and the Anesthesia Medical Group had provided "increased clinic effort".

f.     On or about the dates and in the amounts listed below, the defendant and the two Group doctors caused fraudulent invoices to be submitted to the Department of Anesthesiology, which invoices (a) falsely represented that the two Group doctors and the Anesthesia Medical Group had provided various services to the Department of Anesthesiology, and (b) were fraudulently approved for payment by the defendant as the Program Administrator for the Department of Anesthesiology.

| DATE | INVOICE FROM | AMOUNT REQUESTED |
|------|--------------|------------------|
| 09/01/07 | Doctor 1 | $210,000 |
| 09/01/07 | Doctor 2 | $100,000 |
| 09/21/07 | Anesthesia Medical Group | $170,000 |
| 07/01/08 | Doctor 1 | $228,333 |
| 07/01/08 | Doctor 2 | $112,500 |
| 07/01/08 | Anesthesia Medical Group | $180,000 |
| 06/29/09 | Anesthesia Medical Group | $180,000 |
| 09/01/09 | Doctor 1 | $228,333 |
| 09/01/09 | Doctor 2 | $112,500 |

g.    As a result of the fraudulent documents listed above, on or about the dates listed below, the Department of Anesthesiology was deceived into paying the two Group doctors and the Anesthesia Medical Group the following amounts:

| DATE | PAYEE | AMOUNT |
|------|-------|--------|
| 10/02/07 | Anesthesia Medical Group | $170,000 |
| 10/04/07 | Doctor 1 | $210,000 |
| 10/04/07 | Doctor 2 | $100,000 |
| 07/31/08 | Doctor 1 | $210,000 |
| 07/31/08 | Doctor 2 | $100,000 |
| 08/06/08 | Anesthesia Medical Group | $180,000 |
| 07/30/09 | Anesthesia Medical Group | $180,000 |
| 10/22/09 | Doctor 1 | $210,000 |
| 10/22/09 | Doctor 2 | $100,000 |
| *Total Paid For Fiscal Years 2008-2010 - $1,460,000* | | |

h.  To compensate the defendant for her participation in the scheme to deceive the Department of Anesthesiology into making the fraudulent payments to the two Group doctors and the Anesthesia Medical Group, on or about the dates listed below, the Anesthesia Medical Group was deceived into paying the defendant's business, DJA Solutions, the following amounts, the payment of which amounts represented monetary transactions within the Western District of New York by, through and to financial institutions, affecting interstate commerce, in criminally derived property of a value greater than $10,000:

| DATE | AMOUNT |
|------|--------|
| 11/02/07 | $170,000 |
| 08/15/08 | $180,000 |
| 07/17/09 | $105,000 |
| 07/31/09 | $ 70,000 |
| Total - $525,000 | |

*Fraudulent Payments From January 1, 2010, to September 2012*

i.  From January 2010 to September 2012, the Department of Anesthesiology and the Anesthesia Medical Group were deceived into causing a large portion of the compensation earned by the Anesthesia Medical Group from the Department of Anesthesiology to be diverted to the two Group doctors.

j.  On or about January 1, 2010, Doctor 1, on behalf of the Anesthesia Medical Group, executed a new contract with the Department of Anesthesiology which set forth the compensation the Anesthesia Medical Group would receive for providing anesthesiologists to the Department of Anesthesiology from January 1, 2010, through June 30, 2014.

k.  On or about the dates and in the amounts listed below, the two Group doctors each executed fraudulent contracts with the Department of Anesthesiology for the fiscal years 2010 through 2013 which stated that they intended to provide "additional administrative work...[i]ncluding recruitment, education, and scheduling support..." to the Department of Anesthesiology:

| *DATE* | *FISCAL YEAR* | *DOCTOR/CONTRACT AMOUNT* |
|---|---|---|
| 03/16/09 | 2010 | Doctor 1  $480,000 |
|  |  | Doctor 2  $330,000 |
| 02/17/10 | 2011 | Doctor 1  $480,000 |
|  |  | Doctor 2  $330,000 |
| 02/17/11 | 2012 | Doctor 1  $450,000 |
|  |  | Doctor 2  $250,000 |
| 02/17/12 | 2013 | Doctor 1  $450,000 |
|  |  | Doctor 2  $250,000 |
| *Total of Contracts   -   $ 3,020,000* | | |

l.     The defendant improperly signed the contracts listed above on behalf of the Department of Anesthesiology, and she intentionally failed to disclose the existence of the contracts to the Chair of the Department of Anesthesiology and the other anesthesiologists at the Anesthesia Medical Group.

m.     To deceive the Anesthesia Medical Group into receiving less compensation than it was entitled under its new contract with the Department of Anesthesiology, which contract was negotiated by Doctor 1 on behalf the Anesthesia Medical Group, the defendant and the Doctor 1 caused the Anesthesia Medical Group to submit false invoices to the Department of Anesthesiology which under-reported the compensation the Anesthesia Medical Group had earned for the services it had provided to the Department of Anesthesiology. For example, for July 2011 and August 2011, the defendant and Doctor 1 caused the Anesthesia Medical Group to submit invoices to the Department of Anesthesiology which each billed the Department of Anesthesiology the grossly under-reported amount of $9,515, when, under the terms of the new contract negotiated by Doctor 1, the Anesthesia Medical Group was entitled to at least $100,000 more in compensation for each month.

n.     To deceive the Department of Anesthesiology into diverting to the two Group doctors compensation earned by the Anesthesia Medical Group, the two Group doctors submitted fraudulent invoices in their own names to the Department of Anesthesiology, which invoices (a) falsely represented that the two Group doctors had provided the services listed on such invoices, and (b) were fraudulently approved for payment by the defendant as the Program Administrator for the Department of Anesthesiology. For example, Doctor 2 caused to be submitted an invoice to the Department of Anesthesiology requesting

a payment of $100,000 for "Professional Administrative Services" he claimed he had provided to the Department of Anesthesiology dated June 1, 2011. Likewise, Doctor 1 caused to be submitted an invoice to the Department of Anesthesiology requesting a payment of $100,000 for "Professional Administrative Services" he claimed he had provided to the Department of Anesthesiology dated July 1, 2011.

o. As a result of the fraudulent documents listed above, on or about the dates listed below, the Department of Anesthesiology was deceived into paying the two Group doctors the following amounts:

| *DATE* | *FISCAL YEAR* | *DOCTOR/PAYMENT AMOUNTS* | |
|---|---|---|---|
| 03/16/09 | 2010 | Doctor 1 | $ 91,665 |
| | | Doctor 2 | $ 72,500 |
| 02/17/10 | 2011 | Doctor 1 | $429,996 |
| | | Doctor 2 | $250,000 |
| 02/17/11 | 2012 | Doctor 1 | $534,996 |
| | | Doctor 2 | $250,000 |
| 02/17/12 | 2013 | Doctor 1 | $154,999 |
| | | Doctor 2 | $125,000 |
| *Total Paid  -   $ 1,909,156* | | | |

p. To compensate the defendant for her participation in the scheme to deceive the Department of Anesthesiology and the Anesthesia Medical Group, the defendant and at least one of the two Group doctors caused the Anesthesia Medical Group to pay the defendant's business, DJA Solutions, more than it was entitled. For the calendar years listed below, the Anesthesia Medical Group paid DJA Solutions the following amounts:

| *CALENDAR YEAR* | *AMOUNT* |
|---|---|
| 2010 | $300,000 |
| 2011 | $410,000 |
| 2012 | $459,606 |
| *Total Paid - $1,169,606* | |

### Relevant Conduct - 1

q.    The defendant caused the Department of Anesthesiology to make a
      fraudulent and unauthorized loan to a doctor working for the
      Department of Anesthesiology by disguising various payments to the
      doctor as extra compensation earned by the doctor, when in fact, the
      doctor had not earned and was not entitled to such compensation.
      The defendant did this by preparing fraudulent payroll documents,
      which were submitted to the Chair of the Department of
      Anesthesiology for authorization to pay the extra compensation to the
      doctor.

r.    The Chair signed such forms believing that the doctor was entitled to
      such extra compensation and was unaware that such payments were
      actually an improper loan to the doctor.  The total amount of the
      fraudulent payments to the doctor was $510,726.

### Relevant Conduct - 2

s.    From October 2012, to May 2012, the defendant caused the
      Department of Anesthesiology to make fraudulent payments to a
      former employee of the Department of Anesthesiology by disguising
      such payments as compensation earned by the former employee, when
      in fact, the former employee was no longer working for the
      Department of Anesthesiology. The former employee received
      $7,168.27 from the Department of Anesthesiology to which the former
      employee was not entitled.

### Relevant Conduct - 3

t.    From March 2009, to June 2012, the defendant submitted expense
      reimbursement forms to the Department of Anesthesiology for
      expenses the defendant had already been paid or were not business
      expenses actually incurred by the defendant. The defendant received
      approximately $13,097.67 in expense reimbursements from the
      Department of Anesthesiology she should not have received.

## III.    SENTENCING GUIDELINES

5.    The defendant understands that the Court must consider but is not bound by

the Sentencing Guidelines (Sentencing Reform Act of 1984).

## BASE OFFENSE LEVEL

6.    The government and the defendant agree that Guidelines §2S1.1(a)(1) applies

to the offenses of conviction and provides for a base offense level of 29, as determined

below:

Offense Level For Underlying Conduct

a.    § 2B1.1(a)(1):  the base level for the underlying conduct is 7;

b.    § 2B1.1(b)(1)(J): the total loss (including relevant conduct) was
in excess of $2,500,000 and thus there is a 18 offense level
increase;

c.    § 2B1.1(b)(10)(C): the offense involved sophisticated means and
thus there is a 2 offense level increase; and

d.    § 3B1.3:  the defendant abused a position of trust and thus there
is a 2 offense level increase.

## SPECIFIC OFFENSE CHARACTERISTICS
## U.S.S.G. CHAPTER 2 ADJUSTMENTS

7.    The government and the defendant agree that the following specific offense

characteristic does apply:

a.    § 2S1.1(b)(2)(A):  the defendant was convicted under 18 U.S.C.
§1957 and thus there is a 1 offense level increase.

-10-

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

11.     It is the understanding of the government and the defendant that, with a total offense level of 27 and criminal history category of I, the defendant's sentencing range would be a term of imprisonment of 70 to 87 months, a fine of $12,500 to $125,000, and a period of supervised release of 1 to 3 years.   Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in paragraph 1 of this agreement.

12.     The government and the defendant agree to the correctness of the calculation of the Sentencing Guidelines range set forth above.   The government and the defendant, however, reserve the right to recommend a sentence outside the Sentencing Guidelines range. This paragraph reserves the right to the government and the defendant to bring to the attention of the Court all information deemed relevant to a determination of the proper sentence in this action.

13.     The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the pleas of guilty based on the sentence imposed by the Court.

-12-

## ADJUSTED OFFENSE LEVEL

8.      Based on the foregoing, and Guidelines § 2S1.1, Application Note 6, it is the understanding of the government and the defendant that the combined adjusted offense level for the offenses of conviction is 30.

## ACCEPTANCE OF RESPONSIBILITY

9.      At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level downward adjustment of Guidelines § 3E1.1(a) (acceptance of responsibility) and further agrees to move the Court to apply the additional one (1) level downward adjustment of Guidelines § 3E1.1(b), which would result in a total offense level of 27.

## CRIMINAL HISTORY CATEGORY

10.     It is the understanding of the government and the defendant that the defendant's criminal history category is I. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the pleas of guilty based on the Court's determination of the defendant's criminal history category.

-11-

## IV.   STATUTE OF LIMITATIONS

14.   In the event the defendant's pleas of guilty are withdrawn, or convictions vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any other criminal offense involving or related to mail, wire and health care fraud, and money laundering, which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty pleas or vacating of the convictions becomes final.

## V. GOVERNMENT RIGHTS AND RESERVATIONS

15.   The defendant understands that the government has reserved the right to:

a.   provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b.   respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c.   advocate for a specific sentence consistent with the terms of this agreement including the amount of restitution and/or a fine and the method of payment;

d.    modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor; and

e.    oppose any application for a downward departure and/or sentence outside the Guidelines range made by the defendant.

## VI. RESTITUTION AND FINANCIAL PENALTY PROVISIONS

16.    The defendant understands that the Court must require restitution to be paid to the victims of the offenses of conviction, the Department of Anesthesiology and the Anesthesia Medical Group, in an amount that could be up to $3,909,156, as part of the sentence pursuant to Sentencing Guidelines § 5E1.1 and Title 18, United States Code, Section 3663A. From the total restitution amount, the Court shall order restitution of $1,460,000 to the Department of Anesthesiology and $540,000 to the Anesthesia Medical Group. Prior to sentencing, it will be determined what portion of any remaining restitution amount shall be ordered to be paid to either the Department of Anesthesiology or the Anesthesiology Medical Group.

17.    Further, pursuant to Title 18, United States Code, Section 3663(a)(3), and in connection with the relevant conduct sections found in Paragraph 4 above, the parties agree that the Court shall require restitution in an amount up to $530,991.94 to be paid to the Department of Anesthesiology as part of the defendant's sentence.

-14-

18.     The defendant agrees to disclose fully and completely all assets in which the defendant either has any property interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The defendant agrees to make complete financial disclosure to the United States by truthfully executing a sworn financial statement by the deadline set by the United States, or if no deadline is set, no later than two weeks prior to the date of sentencing. The defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms for the United States to obtain tax information, bank account records, credit history, and social security information. The defendant agrees to discuss or answer any questions by the United States relating to the defendant's complete financial disclosure. The defendant will submit to an examination under oath and/or a polygraph examination conducted by an examiner selected by the U.S. Attorney's Office on the issue of the defendant's financial disclosures and assets, if deemed necessary by the U.S. Attorney's Office. The defendant certifies that the defendant has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by the agreement and/or that may be imposed upon the defendant by the Court. In addition, the defendant promises that the defendant will make no such transfers in the future.

19.     The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

-15-

20.     The defendant understands and agrees that the Court, at the time of sentencing, may order that all monetary penalties imposed at that time (including any fine, restitution, or special assessment imposed in accordance with the terms and conditions of this plea agreement) are to be due and payable in full immediately and subject to immediate enforcement by the United States.  The defendant understands and acknowledges that any schedule of payments imposed by the Court at the time of sentencing is merely a minimum schedule of payments and does not, in any way, limit those methods available to the United States to enforce the judgment.

21.     The defendant agrees that any funds and assets in which the defendant has an interest, which have been seized or restrained by the government or law enforcement as part of the investigation underlying this plea agreement, and not subject to forfeiture, will be used to satisfy any debts owed by the defendant to the United States and/or agencies thereof.

## VII. APPEAL RIGHTS

22.     The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed.  The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 11, above,

-16-

notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence. The defendant further agrees not to appeal a restitution order which does not exceed the amount set forth in Section VI of this agreement.

23. The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

24. The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 11, above, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## VIII. COOPERATION

25. The defendant will cooperate with the government by providing complete and truthful information regarding the defendant's knowledge of any and all criminal activity,

whether undertaken by the defendant or others, in any way involving or related to mail, wire and healthcare fraud, and money laundering involving the Department of Anesthesiology and the Anesthesia Medical Group. The defendant's cooperation shall also include submitting to interviews by government attorneys and agents, as well as testifying truthfully and completely before grand juries and at such pre-trial and trial proceedings as the government shall deem necessary.

26.    The defendant's cooperation shall also be provided to any local, state or federal authorities designated by the government and who have agreed to abide by the terms of the "Cooperation" section of this agreement.   The defendant's obligation to testify truthfully and completely shall extend to proceedings in local, state and federal courts in jurisdictions which have agreed to abide by this agreement.

27.    In exchange for the defendant's plea of guilty and cooperation as set forth in this agreement, the defendant will not be prosecuted by the Office of the United States Attorney for the Western District of New York for any other federal criminal offenses committed in the Western District of New York in any way involving or related to mail, wire and healthcare fraud, and money laundering involving the Department of Anesthesia and the Anesthesia Medical Group, committed up to the date of this agreement and about which the defendant provides complete and truthful information.

28.    Further, no testimony, statements or tangible objects provided by the defendant in compliance with this agreement (or any information directly or indirectly

-18-

derived therefrom) will be used against the defendant in any criminal case, except a prosecution for perjury or making false statements.

29. Upon condition that the defendant has fully complied with all terms and conditions of this agreement, should the government determine that the defendant has provided substantial assistance in the investigation or prosecution of other persons who have committed offenses, the government will move the Court at sentencing to depart downward from the Guidelines as provided for in Guidelines § 5K1.1. The defendant understands that the decision to make such a motion is within the sole discretion of the government and that the decision to grant such a motion, and the extent of any downward departure, are matters solely within the discretion of the Court.

30. This agreement does not preclude the prosecution of the defendant for perjury or making false statements in the event the defendant testifies falsely or provides false information to the government. This agreement is not contingent upon the filing of charges against, the return of an Indictment against, or the successful prosecution of, any person or entity.

31. It is a condition of this agreement that, up through the date of the defendant's sentencing, the defendant shall commit no further crimes. It is also a condition of this agreement that the defendant must, at all times, give complete, truthful and accurate information and testimony and not withhold information from the government or refuse to

testify truthfully and completely. Should the defendant be sentenced prior to the completion of the defendant's cooperation with the government, the defendant's obligation to comply with the cooperation provisions of this agreement extends past sentencing.

32.    In the event the government believes the defendant has violated any of the conditions of the "Cooperation" section of this agreement, the government, in addition to its other rights as set forth in the "Cooperation" section of this agreement, reserves the right: (a) to modify any recommendation the government agreed to make in a motion pursuant to Guidelines § 5K1.1 and/or Title 18, United States Code, Section 3553(e); and (b) to petition the Court, before or after sentencing, for an order declaring that the defendant has breached the "Cooperation" section and relieving the government of its obligations under this section.

33.    In the event the government petitions the Court to declare that the defendant has breached the "Cooperation" section of this agreement, whether the defendant has violated any of the conditions of the "Cooperation" section shall be determined by the Court in an appropriate proceeding at which any disclosures and documents provided by the defendant shall be admissible and at which the government shall be required to establish any violation by a preponderance of the evidence. In order to establish any violation by the defendant, the government is entitled to rely on statements and information given by the defendant pursuant to this agreement.

-20-

34.    If the "Cooperation" section of this agreement is declared breached by the

Court:

a.    the defendant shall thereafter be subject to prosecution for any
      federal criminal violations of which the government has
      knowledge, including but not limited to, perjury and
      obstruction of justice;

b.    the government may withdraw any motion filed pursuant to
      Sentencing Guidelines § 5K1.1, Title 18, United States Code,
      Section 3553(e) and/or Rule 35(b);

c.    the defendant has no right to withdraw the plea of guilty;

d.    the defendant shall waive all rights under Fed. R. Crim. P.
      11(f), Fed. R. Evid. 410 and Sentencing Guidelines § 1B1.8 and
      the defendant expressly agrees that all statements, testimony
      and tangible objects provided by the defendant (with the
      exception of statements made in open court during guilty plea
      proceedings), whether prior or subsequent to this agreement,
      can be used directly and indirectly in any and all criminal
      proceedings against the defendant; and

e.    the defendant agrees that any charges that were dismissed
      pursuant to this agreement shall be automatically reinstated
      upon motion of the government. Furthermore, the defendant
      agrees not to assert the statute of limitations as a defense to any
      criminal offense involving or related to mail, wire and
      healthcare fraud involving the University of Rochester and
      CGF Associates which is not time barred as of the date of this
      agreement. This waiver shall be effective for a period of six
      months following the date upon which the Court's order
      declaring the agreement breached by the defendant becomes
      final.

35.    At the time of sentencing, the government will make the nature and extent of

the defendant's compliance with this agreement known to the Court. The government and

-21-

the defendant will request that sentencing be adjourned until full satisfaction by the defendant of the terms of this agreement. In the event the defendant is sentenced prior to the completion of the defendant's cooperation with the government, the government reserves the right to modify any recommendation to be made by the government at sentencing pursuant to Guidelines § 5K1.1 and/or Title 18, United States Code, Section 3553(e).

36.     The defendant's attorney is expressly permitted to be present at any time the defendant is questioned or interviewed by government agents regarding the matters set forth in this agreement.

## IX. CIVIL ACTION

37.     Defendant waives and agrees not to assert in any civil lawsuit arising from the conduct which gave rise to the criminal charges that are the subject of this plea any defense based on the double jeopardy or excessive fines clauses of the Constitution.

## X. TOTAL AGREEMENT AND AFFIRMATIONS

38.     This plea agreement represents the total agreement between the defendant, DEBRA BULTER, and the government. There are no promises made by anyone other

than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

WILLIAM J. HOCHUL, JR.
United States Attorney
Western District of New York

BY:

RICHARD A. RESNICK
Assistant United States Attorney

Dated: July 23, 2013

I have read this agreement, which consists of 23 pages. I have had a full opportunity to discuss this agreement with my attorney, WILLIAM T. EASTON, ESQ. I agree that it represents the total agreement reached between myself and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

DEBRA BULTER
Defendant

Dated: July 23, 2013

WILLIAM T. EASTON, ESQ.
Attorney for the Defendant

Dated: July 23, 2013

-23-